Jess **CAMPBELL** et al., ind. and d/b/a Jess Campbell Insurance Agency, Appellants,

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellee.**

No. 17305.

Court of Civil Appeals of Texas, Fort Worth.

April 14, 1972.

Rehearing Denied May 19, 1972.

Nelson, Sherrod, Carter & Oldham, and Eugene Sherrod, Wichita Falls, for appellants.

Joe E. Shaddock, Wichita Falls, for appellee.

## OPINION

MASSEY, Chief Justice.

Policy No. 1–075857 of plaintiff, St. Paul Fire & Marine Insurance Company, was in effect on October 22, 1966 when property of Western Hills Bowling Center in Wichita Falls was damaged by fire. The insurance company paid, then sought recovery against its local insurance agent, the defendant Jess Campbell Insurance Agency. The defendant had acted for the company and its general agent, Cravens, Dargan & Company of Houston, Texas, when the policy was originally written.

A principal theory of recovery was predicated upon the company's contention that the agent had fraudulently caused it to delay policy cancellation and/or to refrain from intended action which would have effected cancellation, which, but for the

fault of the agent, would have eliminated insurance coverage prior to the time of the fire.

After all evidence had been introduced the case was withdrawn from the jury upon the company's motion, with judgment rendered against the agent. Appeal was perfected.

Reversed and remanded.

From our 1966 calendar we observe that the material date of October 14, 1966 fell on a Friday; October 17th was the Monday following; and the date of the consequential fire loss to insured property, October 22nd, was the following Saturday.

There is no evidence in the record relative to times involved for letters, etc. mailed in Wichita Falls—from any post office address—to arrive at any post office address in Houston; and there is no evidence relative to time involved for like delivery of mail posted from Houston to Wichita Falls.

For purposes of the opinion we will assume that a certain letter written in Wichita Falls on October 14, 1966 to Cravens, Dargan & Company, P. O. Box 1660, Houston, Texas, 77001, was mailed on the day it was written. If so the first business day upon which the Cravens, Dargan & Company might have taken action—either because of having received such letter, or because it was not received by that time—would have been on Monday, October 17, 1966. For purposes of the opinion we will assume that Cravens, Dargan & Company, acting for the plaintiff insurance company, would have prepared and mailed—on Monday the 17th —Notice of Cancellation to the insured, Western Hills Bowling Center, Inc. We quote the letter in question:

"JESS CAMPBELL INSURANCE AGENCY
"Suite 220, Oil & Gas Building—P. O. Box 1206
"Wichita Falls, Texas—Phone 723–7121

"TO        Cravens, Dargan & Company
           P. O. Box 1660
           Houston, Texas 77001

           ATTN: MR. JIM STRAHAN, Fire Dept.

"DATE    10–14–66    RE: Western Hills Bowling
                      St. Paul #1–075857;   Exp: 12–21–67

"Dear Mr. Strahan:

"Please pardon my delay in answer to your letter of 9–20–66 in regard to the above.

"We should have this completed late next week. We have had some difficulty in getting the coverage replaced but finally have. There are some correction endorsements as well as rejuggling of amounts to be done before the policy will actually be written.

"We greatly appreciate your patience as it has been of great help to us.

"We will let you know the day we send the original policy to the Checking Office.

"Kind regards,
                 /s/  "Bruce Steward"

There is some question of whether it was established, but we accept as correct for purposes of the opinion that Notice of Cancellation of Policy No. 1–075857, had it been issued (except upon receipt of the quoted letter) would have provided that Policy No. 1–075857 "is hereby cancelled, to take effect 5 days after receipt of this notice." We will assume that delivery of Notice of Cancellation, had it been issued, would have been received by the insured on Tuesday, October 18th.

■ Upon the assumption of the foregoing, then under principles of construction the policy would have been in effect on Wednesday, Thursday, Friday, Saturday and Sunday; or to and inclusive of the date of Sunday, October 23, 1966. The date of the fire loss was Saturday, October 22, 1966. Hence, even if a Notice of Cancellation had issued from Houston on the Monday preceding the loss would have still been covered. (As applied to the mortgagee's interest—not shown by the evidence —coverage would have persisted 5 additional days.)

The wrong of the appellant in any misrepresentation in the letter of October 14th did not occasion loss or damage to the insurance company. Had appellant done no wrong, i. e., had the letter of appellant to Cravens, Dargan & Company given information which caused it to institute normal cancellation procedure, as agent for the insurance company, the cancellation could not have been effected in time to eliminate insurance coverage prior to the fire loss of Saturday, October 22nd, and the company could not have escaped liability to pay the benefits provided by its policy. Therein lies the distinction of the instant case from National Automobile & Cas. Ins. Co. v. Allco Ins. Agcy., 403 S.W.2d 174 (Tex.Civ.App., 1966, no writ hist.) upon which our plaintiff places great reliance. In that case the defendant's false representation indisputably was relied upon by plaintiff to its injury (Opinion, p. 179).

■ There need be no citation of authority to the principle of law that in order to be compensable in damages or otherwise actions wrongfully or negligently committed must have occasioned injurious consequences.

Therefore we must look further into the record to determine whether judgment might be affirmed for some other reason.

Earlier in 1966, around the last of September or first of October, and most probably on October 3rd (a Monday), Mr. Jim Strahan, for Cravens, Dargan & Company, testified that he initiated a telephone call from his office in Houston to the defendant in Wichita Falls. He advised that he was going to cancel the policy in question. We will assume that he intended an immediate act, though such was not proved. The defendant obtained Strahan's consent to delay the intended cancellation through "representations" that another Wichita Falls insurance agent had agreed to provide a policy of insurance in a company represented by him for the majority of the amount of coverage which was currently provided by Policy No. 1–075857, and another company represented by the defendant had agreed to increase the amount of coverage on the "risk" upon which it was theretofore bound, so that the insured *would be* as fully insured as at time of the conversation, and that this *would mean* that the plaintiff's liability would be replaced one hundred percent. Expectation was that such would be accomplished in two weeks. The conversation concluded with the following statement by the appellant: "In fact, if you don't hear from me in the next two weeks, go ahead and send out cancellation notice."

From the foregoing it is obvious that our discussion and holding relative to materiality of ultimate consequences flowing from the representations of the defendant's letter of October 14, 1966 would have like application to the telephone conversation with Mr. Strahan which occurred about October 3, 1966. As applied thereto it would appear that had Cravens, Dargan & Company not been dissuaded in consequence of the defendant's representations, as above

outlined, it would have carried out its announced intention to cancel the policy and that such cancellation would have been effected so as to extinguish all coverage by the plaintiff's policy prior to the date of the fire loss on October 22, 1966. This we will assume for purposes of the opinion.

However, under the foregoing a fact question would be posed upon the existence of actionable fraud. Since an issue was created as to whether Mr. Strahan, for Cravens, Dargan & Company and for the insurance company, was actually dissuaded from initiating cancellation procedure early in October of 1966 upon the factual statements and representations of the defendant relative to the past event of agreement by the other local agent, which he believed, a determinative question seems to be whether the evidence indisputably shows that the representations of the defendant were false. In that connection it should be remembered that as a ramification of the elements usually involved in cases involving actionable fraud, it is true also that "Actionable fraud can be based upon a promise of future action with a present intention not to perform." Stanfield v. O'Boyle, 462 S.W.2d 270 (Tex.Sup.1971).

It should be mentioned, however, that without denying the telephone conversation with Mr. Strahan the defendant insisted that he recalled no such conversation. Therefore the fact of the telephone conversation and representations made during its course was not established as a matter of law. Indeed, the fact of the conversation, and, if any, the gist of the conversation held and representations made in the course thereof raised questions of fact for the jury.

If, in fact, there actually was such a conversation on or about October 3, 1966 between Mr. Strahan and the defendant during the course of which the defendant made false representations as an inducement to delay procedure of cancellation (which, in fact, would have been accomplished but for such representation); and

if, in fact, the plaintiff was thereby induced to refrain from timely cancellation, then the defendant would have probably been guilty of actionable fraud under the defendant's admissions in evidence given upon the trial. That issue was raised by Strahan's testimony that the defendant represented to him that before October he had held the conversation with such other local agent and that the agent had—at such time—agreed to write an insurance policy affording the amount of insurance sufficient (taken together with an increase of coverage under other policies) to replace that of Policy No. 1–075857 one hundred percent.

The evidence of defendant was to the effect that prior to October the local agent in question had promised only to write a partial replacement policy to the maximum amount of $20,000.00, which (even with the increase in insurance afforded by another policy on the same property by a company in the defendant's own office) would have been deficient in affording essential insurance coverage by the amount of $4,000.00 to $5,000.00. By defendant's admissions in his evidence he is accordingly bound. This meant, if Strahan's evidence should be believed, that the defendant did in fact make a material representation which was false concerning the agreement theretofore made to supply insurance. At the same time, however, defendant told Strahan to send out cancellation notice after two weeks if he had not heard from the defendant within that period. If Policy No. 1–075857 was replaced (in the hands of the insured) by other policies or policy "binders" there would be no necessity for plaintiff to send out cancellation notices. The situation presented would be one to be resolved as a question of fact, or as a mixed question of law and fact.

Immaterial from a legal standpoint, though important from an evidentiary standpoint was the defendant's admission the same condition of $4,000.00 to $5,000.00 deficiency in available essential insurance coverage continued to exist on date of Oc-

tober 14, 1966 when defendant wrote the letter wherein it was stated that the coverage had finally been replaced. As of that time there had been no commitment by the local agent (for another company) to supply replacement coverage in excess of $20,000.00. Indeed, as defendant admitted, such other agent had not been contacted since the time Strahan testified the telephone conversation was held with the defendant.

The case should not have been withdrawn from the jury. The pleading and evidence raised issues of fact determinative of liability for actionable fraud. There is some question whether fact issues were raised sufficient to support plaintiff's cause of action under alternative theories, but most certainly was there want in the establishment of a right to recover under any of them as a matter of law.

Reversed, with remand for another trial.